STATE OF NORTH CAROLINA v. CLIFFORD ROTENBERRY, AKA JOHNNY LEE DUNN

No. 814SC485

(Filed 17 November 1981)

1. **Criminal Law § 21.1— continuance of probable cause hearing—extraordinary cause—due process**

The trial court did not err in finding that extraordinary cause existed to allow the State's motion to continue defendant's probable cause hearing, made on the day the hearing was originally scheduled, because it was then after 4:00 p.m. and there was insufficient time to conduct probable cause hearings on the

eight cases against defendant. G.S. 15A-606(f). Nor was defendant's constitutional right to due process violated when the probable cause hearing was continued until two days later, since a probable cause hearing is not constitutionally required.

**2. Criminal Law § 77.1— letter to girlfriend—competency as admission of defendant**

In a prosecution for felonious assault and discharging a firearm into an occupied building, a letter from defendant to his girlfriend, who was an assault victim, confessing his love for her, asking her to testify for him, and stating that he would tell her everything to say and that "it's all my fault" was competent as an admission by defendant.

**3. Criminal Law §§ 88.2, 169.6— exclusion of cross-examination—refusal to have answer placed in record**

In a prosecution for felonious assault and discharging a firearm into an occupied building, the trial court did not err in sustaining its own objection to defense counsel's cross-examination of a witness concerning the type of container in which the witness bought a soft drink since such evidence was irrelevant. Nor did the trial court err in refusing to permit defense counsel to place the witness's answer in the record since both the question and the answer were immaterial.

**4. Indictment and Warrant § 12— correction of case number on indictment—no amendment**

A correction of the case number on a bill of indictment did not constitute an amendment of the indictment prohibited by G.S. 15A-923(e).

**5. Assault and Battery § 15.2— instructions on intent to kill—any error cured by verdict**

In a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury, any error in the submission to the jury of the element of intent to kill was rendered harmless by the jury's verdict finding defendant guilty of the lesser offense of assault with a deadly weapon.

**6. Assault and Battery § 14.4— felonious assault—serious injury—sufficiency of evidence**

The State's evidence of "serious injury" was sufficient to support submission to the jury of an issue of defendant's guilt of assault with a deadly weapon with intent to kill inflicting serious injury where the victim testified that he was struck in the neck, arm, hand and head with 42 shotgun pellets fired through the window of a grill; after he was injured, he crawled under a sink in the grill with blood running from him onto the floor; he was then taken to the hospital by ambulance; and the doctor was unable to remove all of the pellets.

**7. Criminal Law § 138.7— defendant's escape—consideration at sentencing hearing**

Defendant's escape pending his trial was relevant information for the court to consider at defendant's sentencing hearing.

**8. Criminal Law § 140.3— consecutive sentences—no cruel and unusual punishment**

Imposition of consecutive sentences upon defendant for each of five counts of assault with a deadly weapon, one count of assault with a deadly weapon inflicting serious injury and one count of discharging a firearm into an occupied building did not constitute cruel and unusual punishment where none of the sentences exceeded the maximum provided by statute for the offense for which it was imposed.

APPEAL by defendant from *Lane, Judge.* Judgments entered 17 October 1980 in Superior Court, DUPLIN County. Heard in the Court of Appeals 21 October 1981.

Defendant was indicted on six counts of assault with a deadly weapon with intent to kill inflicting serious injury and one count of discharging a firearm into an occupied building. A jury found him guilty of five counts of assault with a deadly weapon, one count of assault with a deadly weapon inflicting serious injury and discharging a firearm into an occupied building. Defendant has appealed from the prison sentences imposed.

The State's evidence tends to show that in the early morning hours of 1 August 1980 defendant was playing pool at Dot's Grill in Wallace, North Carolina. Erica McMahon, defendant's girl friend, observed defendant and Debbie Webb at the Grill and informed Ms. Webb that she should stay away from defendant. Ms. McMahon testified that she and defendant were living together. As the two women were arguing, defendant came up and threatened to kill Ms. McMahon. Later in the morning defendant and Ms. Webb left the Grill. Ms. McMahon began looking for them and discovered them unclothed in Ms. Webb's truck parked near the Grill. She ordered Ms. Webb out of the truck and threatened to "stomp" her. Defendant left the truck, walked to his van nearby and obtained a gun. Two men who were at the Grill wrestled the gun from defendant and removed the bullets. They then returned the gun to him. Defendant struck Ms. McMahon with the gun and ran back to the truck. He then ran toward the Grill and started shooting through the window. Two witnesses, who were standing outside the Grill at the time of the shooting, testified that defendant was definitely the person who fired into the Grill. Five other persons testified that they were shot while inside the Grill.

The Chief of Police for the Town of Wallace testified that he received a telephone call about the alleged shooting at 5:18 a.m. on 1 August 1980. He drove to the Grill and searched the surrounding woods. At 6:30 a.m. he found defendant and Ms. Webb under the floor of one of the carnival rides located beside the Grill. Defendant informed him that he knew nothing about a gun being fired.

The defendant presented no evidence.

*Attorney General Edmisten by Assistant Attorney General Dennis P. Myers, for the State.*

*Charles M. Ingram for defendant appellant.*

MARTIN (Robert M.), Judge.

Defendant has brought forward on appeal all forty-one of his assignments of error and has incorporated them into nine arguments.

[1] Defendant first assigns error to the trial court's allowance of the State's motion to continue his probable cause hearing. The hearing was initially scheduled for 12 August 1980. At approximately 3:10 p.m. on said date, the State moved for a continuance on the basis that none of the State's witnesses was present. The trial court allowed the motion after finding that an extraordinary cause had been shown which justifed the continuance. The court noted that 140 cases were on the 12 August 1980 calendar; that it was after 4:00 p.m. and that there was insufficient time to hold probable cause hearings on the eight cases against defendant. The hearing was thereafter held two days later. Defendant contends in his brief that neither the reason given by the State nor the findings in the trial court's order granting the continuance constitutes an extraordinary cause as defined in G.S. 15A-606. He further contends that the State's motion was untimely. G.S. 15A-606(f) provides:

> Upon a showing of good cause, a scheduled probable-cause hearing may be continued by the district court upon timely motion of the defendant or the State. Except for extraordinary cause, a motion is not timely unless made at least 48 hours prior to the time set for the probable-cause hearing.

It is the trial court's duty to determine good cause and extraordinary cause. *State v. Siler*, 292 N.C. 543, 234 S.E. 2d 733 (1977). We find no error in the trial court's determination in the case at bar. Even if the continuance was erroneously granted, defendant failed to show any prejudicial effect from the two day delay.

We also find no merit to defendant's Assignments of Error Nos. 2, 3 and 7, which are based upon the trial court's denials of defendant's motions to dismiss. At the 14 August 1980 probable cause hearing, at the beginning of trial and at the close of all the evidence, defendant moved to dismiss the charges against him on the basis that his constitutional right to due process was violated when the probable cause hearing was continued. In *State v. Foster*, 282 N.C. 189, 192 S.E. 2d 320 (1972), the Court held that neither the United States Constitution nor the North Carolina Constitution requires a preliminary hearing before a defendant may be prosecuted. This holding has been reaffirmed in *State v. Lester*, 294 N.C. 220, 240 S.E. 2d 391 (1978), and the recent case of *State v. Oliver*, 302 N.C. 28, 274 S.E. 2d 183 (1981). We further note that a probable cause hearing is unnecessary after the grand jury has returned indictments. *State v. Foster, supra.*

[2] Assignments of Error Nos. 4 and 5 concern the admissibility of evidence involving a letter written to Ms. McMahon by defendant. Ms. McMahon testified that she had received three letters from defendant in the two months preceding his trial. The trial court allowed Ms. McMahon to read one of these letters to the jury. In the letter defendant confessed his love for her. Ms. McMahon then read the following to the jury:

> Im (sic) facing 134 years. Baby, that is alot of time. If you care at all you will testify for me in Court. You want (sic) get into any trouble. I'm—I'll tell you everything to say, but then again you probably don't care. If you do you best get down here and see me. . . . Why, you don't know how much I'm hurt over all this shit and it's all my fault.

Defendant argues that the contents of this letter were immaterial to the charges against him and only prejudiced the minds of the jurors. We feel that defendant's letter to his girlfriend qualifies as an admission by defendant and is, therefore, competent evidence. *State v. Edwards*, 286 N.C. 140, 209 S.E. 2d 789 (1974).

Notwithstanding our opinion, defendant has failed to show any prejudicial effect from the reading of this letter to the jury.

[3]  Defendant next argues that the trial court erred in sustaining *sua sponte* its own objection to cross-examination of a witness by defense counsel and in refusing to allow defense counsel to note an exception in the record. During the cross-examination of one of the eyewitnesses to the shooting, defense counsel asked him if he bought a soft drink at the Grill in a cup, bottle or can. The court then called defense counsel and the district attorney to the bench and instructed defense counsel not to pursue this line of questioning. Defense counsel then explained to the court that his question was an attempt to determine whether the witness had been consuming alcohol at the Grill and had bought the soft drink in order to mix with an alcoholic beverage. After considering this explanation the court still refused to allow the question and to allow defense counsel to place the answer in the record. Defendant argues that the court's action "unfairly restricted the cross-examination by defendant of a State's witness, and thereby hampered impermissibly the effective representation of the accused." He further argues that the court expressed an opinion in violation of G.S. 15A-1222 and -1232 by refusing to allow the question. Our Supreme Court has consistently held that the legitimate bounds of cross-examination remain largely within the trial court's discretion. *State v. Robinson,* 280 N.C. 718, 187 S.E. 2d 20 (1972); *State v. Chance,* 279 N.C. 643, 185 S.E. 2d 227 (1971); *State v. McPherson,* 276 N.C. 482, 172 S.E. 2d 50 (1970). The Court has further emphasized that the trial court should disallow any line of cross-examination which constitutes immaterial, irrelevant and incompetent matter. *State v. McPherson, supra.* In the case at bar, we find no relevance to the question concerning the type of container in which the witness bought his soft drink. The defendant's contention, that a certain type of container would infer that the witness bought the drink in order to mix with an alcoholic beverage, is sheer speculation.

The court's refusal to allow defense counsel to place the witness' answer in the record was also proper. In a similar situation our Supreme Court, quoting *State v. McPherson, supra,* found no error:

> "Ordinarily, this Court does not approve the refusal of the trial court to permit counsel to insert in the record the

answer to a question to which objection has been sustained."
*State v. McPherson, supra* at 487, 172 S.E. 2d at 53. But in
certain instances where both the question and the answer are
immaterial, the trial judge's refusal to have an answer placed
in the record will not be held error. *State v. McPherson,
supra.*

*State v. Stanfield,* 292 N.C. 357, 362, 233 S.E. 2d 574, 578 (1977).
We finally note that defendant has failed to show that the verdict
was improperly influenced by the trial court's action. This assign-
ment of error is overruled.

[4] Defendant has assigned error to the denial of his motion to
dismiss case #80CRS4869 on the ground that no bill of indictment
in this case was ever returned by the grand jury. Our examina-
tion of the record on appeal discloses that a warrant for arrest
#4869 was issued charging defendant with assaulting William
Ellis Rivenbark, Jr., with a deadly weapon with intent to kill and
resulting in serious injury. The warrant for arrest in case #4870
charged defendant with discharging a firearm into an occupied
building, Dot's Grill. Thereafter seven bills of indictment were
returned against defendant. Two of these bills were numbered
80CRS4870. One bill indicted defendant for the crime of felonious-
ly discharging a firearm into an occupied building and the other
charged him with the assault upon Rivenbark. When this error
was called to the attention of the trial judge, he allowed the State
to amend the indictment charging the assault upon Rivenbark by
changing the number to #80CRS4869. Defendant argues that G.S.
15A-923(e) prohibits any amendment to a bill of indictment. In
*State v. Carrington,* 35 N.C. App. 53, 58, 240 S.E. 2d 475, 478,
*disc. review denied and appeal dismissed,* 294 N.C. 737, 244 S.E.
2d 155 (1978), we interpreted the term "amendment" to mean
"any change in the indictment which would substantially alter the
charge set forth in the indictment." Defendant adopts the position
that by amending an indictment so that it charges an accused in a
case which no indictment was rendered by the grand jury results
in a substantial change. We reject this position. Defendant was
charged in an arrest warrant and a bill of indictment for the
felonious assault upon Rivenbark. The mere typographical error
in the bill of indictment involving the case number does not alter
the charge in any way. At no time was defendant misled as to the
nature of the charges against him.

[5]   At the close of the evidence, defendant moved to dismiss the charges on the grounds that there was insufficient evidence of serious injury and any intent to kill. Defendant has assigned error to the denials of these motions. We initially note that although the trial court submitted to the jury six charges of assault with a deadly weapon with intent to kill inflicting serious injury, the defendant was found guilty of assault with a deadly weapon in five of these cases and assault with a deadly weapon inflicting serious injury in the remaining case. No intent to kill was found. In *State v. Wynn*, 25 N.C. App. 625, 214 S.E. 2d 274, *cert. denied*, 288 N.C. 252, 217 S.E. 2d 677 (1975), defendant was charged with second degree murder and the jury found him guilty of voluntary manslaughter. We found no error in the refusal of the trial court to dismiss the charge of second degree murder and concluded "that his conviction of a lesser charge rendered harmless the submission of the greater charge to the jury, at least absent some showing that the verdict of guilty of the lesser offense was affected thereby. (Citations omitted.)" *Id.* at 627, 214 S.E. 2d 276. Since defendant has failed to show that the verdicts of guilty as to assault with a deadly weapon were affected by the charge on the greater offense, this assignment of error as it refers to the charge on the element of intent to kill is overruled.

[6]   We also find no error in the inclusion of the element of serious injury in the charge. Only in case #80CRS4869 was defendant found guilty of assault with a deadly weapon *inflicting serious injury*. "Serious injury" as employed in G.S. 14-32(b) means physical or bodily injury resulting from an assault with a deadly weapon. The injury must be serious, but evidence of hospitalization is not required. The question of whether a serious injury has occurred is determined by the facts of each case and is a jury question. *See State v. Ferguson*, 261 N.C. 558, 135 S.E. 2d 626 (1964); *State v. Jones*, 258 N.C. 89, 128 S.E. 2d 1 (1962). In the case at bar, Rivenbark testified that he was struck in the neck, arm, hand and head with 42 shotgun pellets. He further testified that after he was injured, he crawled under a sink in the Grill "with blood running from him onto the floor." He was then taken to the hospital by ambulance. He emphasized that the doctor was unable to remove all of the pellets. In light of this evidence, we find no error in the court's submission of the charge of assault upon William Rivenbark with a deadly weapon with the intent to kill inflicting serious injury.

Assignments of Error Nos. 11-28 involve alleged errors in the trial court's instructions to the jury. We have examined the charge and admit that the instructions were at times confusing. When the charge though is viewed as a whole, we find no reversible error.

> If the charge as a whole presents the law fairly and clearly to the jury, the fact that isolated expressions, standing alone, might be considered erroneous will afford no ground for a reversal. *State v. Hall,* 267 N.C. 90, 147 S.E. 2d 548 (1966). Furthermore, insubstantial technical errors which could not have affected the result will not be held prejudicial. *State v. Norris,* 242 N.C. 47, 86 S.E. 2d 916 (1955). The judge's words may not be detached from the context and the incidents of the trial and then critically examined for an interpretation from which erroneous expressions may be inferred. *State v. Gatling,* 275 N.C. 625, 170 S.E. 2d 593 (1969); *State v. Jones,* 67 N.C. 285 (1872).

*State v. McWilliams,* 277 N.C. 680, 685, 178 S.E. 2d 476, 479 (1970).

[7] Defendant's final argument involves alleged errors in the sentencing phase of the trial. Defendant first assigns error to the admission of evidence concerning his escape on the day of his probable cause hearing. He argues that this irrelevant evidence only prejudiced the court against him. Formal rules of evidence do not apply in a sentencing hearing. G.S. 15A-1334(b). The court may inquire into such matters as age, character, education, environment, habits, mentality, propensities, and record of a defendant. The court may also inquire into alleged acts of misconduct in prison. *State v. Thompson,* 267 N.C. 653, 148 S.E. 2d 613 (1966). Defendant's escape pending his trial was clearly relevant information for the court to consider at the sentencing hearing. Defendant's assignments of error concerning the court's consideration of letters written by him from his jail cell are not reviewable, because the evidence at the hearing does not indicate the contents of these letters.

[8] Defendant's remaining assignments of error go to the judgments and commitments. He argues therein that the sentences imposed violate the constitutional prohibition against cruel and unusual punishment. On each of his five convictions of assault with a deadly weapon, defendant received a sentence of two years minimum, two years maximum. He was sentenced to nine years

minimum, ten years maximum on his conviction of discharging a firearm into an occupied building. As to his conviction of assault with a deadly weapon inflicting serious injury, defendant received ten years minimun, ten years maximum. All of these sentences were to run consecutively. Since none of these sentences exceeds the maximum provided by statute and since the court did not abuse its discretion in ordering the sentences to run consecutively, these assignments of error are overruled. *State v. Tolley*, 290 N.C. 349, 226 S.E. 2d 353 (1976).

After careful examination of the record, we conclude that defendant received a fair trial free from prejudicial error. The verdicts and judgments are therefore upheld.

No error.

Judges WEBB and WELLS concur.